to pursue now is to reverse the order of the special term, without costs to either party, and without prejudice to a renewal of the motion in case a new trial of the action should be granted.

---

(37 App. Div. 242.)

### CHILDS et al. v. WATERLOO WAGON CO., Limited.

(Supreme Court, Appellate Division, Fourth Department.   January 18, 1899.)

1. SALES—CONSTRUCTION OF CONTRACT—AGENCY.
  Under a contract whereby one agrees to act as agent for a manufacturer, to hold all goods and the proceeds thereof in trust for him, subject to his order, and to sell the same within a specified time, and account for all goods in cash or satisfactory notes,—the giving of notes not to relieve the agent from liability as agent, nor give any title to the property until fully paid, and the agent to receive as commission all he can obtain above a fixed price,—the furnishing of goods by the manufacturer, and his receipt of notes therefor, is not a sale on credit.

2. FACTORS—SALES—RIGHTS OF PRINCIPAL.
  A principal may recover goods from a purchaser from the agent, who held the same to sell on commission, where the transfer was made in payment of an individual debt of the agent, and the principal is the owner of notes given by the agent from time to time for the goods, which have not been paid, and he produces them, and offers to surrender same.

3. SAME—BONA FIDE PURCHASERS.
  Where goods are consigned to an agent for sale, title remaining in the principal until sold, the agent cannot turn over the goods in payment of his own debt; and he confers no title by doing so.

4. SAME—ACCOUNTING.
  Where goods are consigned to an agent to sell on commission, and account therefor in satisfactory bank notes, the principal is not obliged to accept notes of third parties, not shown to be either bank notes or satisfactory.

5. SAME.
  Where goods are consigned to an agent to sell on commission, and account therefor in notes, the principal is not obliged to accept notes for goods not sold.

Appeal from judgment on report of referee.

Action by Charles H. Childs & Co. against the Waterloo Wagon Company, Limited.   From a judgment for plaintiffs, defendant appeals.   Affirmed.

The following is the opinion of the court below (TRACY, Referee):

This action is one in replevin, brought by the plaintiff to recover from the defendant the possession of a quantity of harnesses, etc., to which the plaintiff claims title.   For several years past the plaintiff has been engaged in the manufacture and sale of harnesses and other articles at Utica, N. Y.   While some of its business has been carried on by sales of such property on credit, the greater portion thereof has been conducted by furnishing the same for sale, under written contracts, to parties designated as agents in such contracts. These contracts were contained in printed blanks for ordering goods, prepared and furnished by the plaintiff, which were filled out and signed by the parties at the time they gave orders thereon.   In the year 1896 the plaintiff furnished to one William Rowerdink, doing business at Rochester, N. Y., the merchandise mentioned in the complaint, under such contracts signed by said Rowerdink, except that for a small portion of said merchandise no contract in writing was signed by him, or by his authority.   It is obvious, however, that said last-mentioned merchandise was delivered by the plaintiff to said Rower-

dink upon the terms expressed in the written contracts. Upon the 20th day of August, 1896, there was in the store of said Rowerdink, at Rochester, N. Y., the merchandise described in the complaint, of the value of $1,500, received by said Rowerdink from the plaintiff as aforesaid in the year 1896. Said Rowerdink was then indebted to the defendant in the sum of $1,000 upon a promissory note made by him, and held by the defendant, and was also further indebted in the sum of $9,261.49 upon certain commercial paper delivered by him to the defendant for merchandise purchased of it, which said commercial paper had been indorsed by the defendant and discounted by third parties, and on which the defendant was then contingently liable as indorser. Upon said 20th day of August said Rowerdink sold and transferred to the defendant the entire stock of goods in his store, except a small portion, which he claimed to hold on consignment from other parties, together with all his bills receivable and book accounts. This sale included the merchandise in question. The only consideration for the same was a cancellation and surrendering of said $1,000 note held by the defendant, and the agreement of the defendant to take up said commercial paper of said Rowerdink upon which it was liable as indorser, and cancel and surrender the same, which agreement had been carried out by the defendant at the time of the trial of this action. The rights of the parties to this action must be determined by the construction to be given to said written contracts, and the subsequent acts of the parties thereto in reference to the merchandise ordered thereby. The following is a copy of one of said contracts:

"Harnesses.

"Utica, N. Y., June 3, 1895.

"Charles H. Childs & Co., Utica, N. Y.: I hereby agree to act as agent for you; as such agent, to receive all goods that I hereby or may hereafter order, and to hold all such goods, and all money and proceeds of the sale of the same, subject to your order, and in trust for you; to sell, prior to the time designated by 'terms' or as agreed, as per orders given, all goods received; and to account to you at such time for all goods so received, either in cash, or satisfactory bank notes, bearing interest. It being distinctly agreed that the delivery and receipt of note or notes does not in any way relieve me from liability as agent acting in trust for you, and to account to you for all goods and proceeds as such agent; nor shall the giving by me of any note be construed to give me title to said property, until the same shall be fully paid. In part consideration hereof, it shall be obligatory upon me to protect the interest of Charles H. Childs & Co. in the foregoing referred to property from loss or damage by fire, exposure, or otherwise. All orders subject to the approval of Charles H. Childs & Co., and, when accepted, cannot be canceled. No agreement shall vary the terms of this contract, unless written herein or attached hereto.

"Gentlemen: Please enter order for the following goods: * * *.

"Ship about as ordered, via R. R.

"Terms, 4 Mo. Note less 5%.

"[Harnesses ordered.]

"[Signed]                                        William H. Rowerdink."

It is claimed by the plaintiff that under said contracts said Rowerdink was the agent of the plaintiff; that said merchandise was consigned to him by the plaintiff for sale on commission, for cash or upon credit; that said Rowerdink was to receive as commissions all he could obtain over and above certain specified prices, at which the merchandise was consigned to him; and that he had no right to transfer said merchandise in payment of an existing debt of his own, but only to sell the same for cash or credit, as an agent ordinarily does. It is quite evident that such was the design and intent of the plaintiff, and that said contracts were carefully prepared with that purpose in view. These contracts provide that the subscriber shall act as the agent of the plaintiff, and hold all goods and proceeds of sale subject to the order of the plaintiff; that the subscriber shall sell the goods mentioned in the contract within the period of four months, or as otherwise agreed, and account at the termination of such period for the goods received, in cash, or satisfactory bank notes,

bearing interest. As I construe the contract, the subscriber is obliged to account, in cash or bank notes, at the end of four months, for only the merchandise sold by him as such agent. That he is not bound, by the terms of the contract, to take and pay for the merchandise then remaining unsold in his hands. That he is to sell all goods received, within four months' time, and to account for the same in cash or bank notes. The only liability that the subscriber to the contract incurs by reason of his failure to sell the consigned goods within the period prescribed is the damage the plaintiff may sustain by reason of his failure to do so. I find, from the provisions of these contracts, that there was no sale of merchandise on credit, but a consignment of the same, at certain prices, by a principal to his agent, for sale on commission, with the implied agreement that the agent shall not sell at less than the prices specified in the invoice, receiving for his commissions all he obtains over such prices. The giving of notes at the time the goods were received did not make the transaction a sale of goods on credit, because the contracts expressly provided that the execution of such notes should not have that effect.

It appears from the evidence that notes were given by Rowerdink to the plaintiff from time to time; that sometimes the notes included two or more consignments of merchandise, but that the same were not given on general account; that the plaintiff frequently procured said notes to be discounted, and from time to time they were partly paid by Rowerdink to the plaintiff, and partly renewed by Rowerdink; that notes were given by Rowerdink to the plaintiff for all the merchandise involved in this action; and that goods of the value of ninety-two dollars and sixty cents, for which a recovery is sought, were covered by notes which had been discounted by the plaintiff, and were held by third parties at the time of the commencement of this action; that none of said notes given by Rowerdink for the goods involved herein have been paid. Upon the trial of this action, it appeared that the plaintiff had become the owner of all of said notes above mentioned; and it produced the same upon the trial of this action, and offered to surrender the same. This, I think, was all that was required of the plaintiff to enable it to maintain this action.

Mr. Rowerdink mingled the moneys derived from the sale of goods received from the plaintiff with his moneys, and from time to time paid notes given the plaintiff out of his general funds, rendering no account of sales of said goods, and selling the same on what period of credit he chose, all of which the plaintiff knew, or had reason to believe was the case. The contracts provided that Rowerdink should insure the interest of the plaintiff in the merchandise, but it does not appear whether such insurance was ever placed thereon. Whatever effect such a course of business might have as to the proceeds of goods sold by Rowerdink, if this action was brought by the plaintiff against Rowerdink to charge him with an indebtedness contracted in a fiduciary capacity, as to goods not sold by Rowerdink as agent of the plaintiff he is bound by his contract.

The defendant claims that it is entitled to retain the goods in question, upon the ground that it is a bona fide purchaser for value of said merchandise. In my view of this case, the goods were consigned by a principal to its agent for sale on commission; the title remaining in the principal until the goods were sold by the agent in the usual course of business. The fact that the agent was to receive as commissions all he could obtain over a certain price at which the goods were consigned to him, instead of a percentage on sales, did not change the transaction to a sale of goods. Certainly an agent has no right to turn over consigned goods in payment of a debt of his own, and confers no title by so doing.

It is further claimed by the defendant that the plaintiff has waived its right to recover because it refused to accept certain notes of third parties tendered it by Rowerdink, saying that it preferred Rowerdink's notes. The evidence does not show that this was an offer to account and furnish notes under the contracts for goods sold, or that the notes tendered were bank notes, satisfactory or collectible. Nor was the plaintiff obliged to accept such notes for consigned goods not sold by Rowerdink at the time the same were tendered. I think, therefore, that the plaintiff is entitled to a recovery in this action.

Argued before HARDIN, P. J., and FOLLETT, ADAMS, McLEN-NAN, and SPRING, JJ.

George H. Harris, for appellant.

Thomas D. Jones, for respondents.

PER CURIAM.    Judgment affirmed, with costs, on the opinion of the referee.

---

In re ROBINSON'S WILL (two cases).

(Supreme Court, Appellate Division, Second Department.    April 18, 1899.)

EXECUTORS—ACCOUNTING—COMPENSATION TO GUARDIAN AD LITEM.

In a proceeding for an accounting by the executors before a surrogate, compensation to a guardian ad litem out of the general fund, as distinguished from the estate of the infant, is limited to the taxable costs in the suit, irrespective of whether the infant has any interest in the property in court.

Appeal from surrogate's court, Kings county.

In the matter of the final judicial settlement of the accounts of Jeremiah P. Robinson and others as executors of, and trustees under, the will of Jeremiah P. Robinson, deceased, and under the will of Elizabeth Robinson, deceased.    From parts of the decree of the surrogate, the guardian ad litem for certain infants appeals.    Affirmed.

Argued before GOODRICH, P. J., and CULLEN, BARTLETT, HATCH, and WOODWARD, JJ.

R. Burnham Moffat, special guardian, for appellants.

Frank D. Sturges, for respondents.

CULLEN, J.    These are proceedings brought for an accounting by the executors of the wills of Mr. and Mrs. Robinson.    The executors of both wills are the same, and so are the persons interested in the two estates, and the parties to the proceedings.    On the conclusion of the proceedings, the appellant the guardian ad litem for the Leech infants applied to the surrogate for an allowance, by way of compensation, in addition to the taxable costs authorized by section 2561 of the Code of Civil Procedure.    The applications were denied by the learned surrogate for want of power, and from so much of the decrees as denies the guardian's applications these appeals are taken.

The learned surrogate based his conclusion that there was no power in the court to grant additional compensation to the guardian, from the corpus of the estate, on the authority of In re Budlong, 100 N. Y. 203, 3 N. E. 334, and In re Ruppaner, 7 App. Div. 11, 39 N. Y. Supp. 763.    The guardian ad litem, while admitting the force of these decisions, insists that they are applicable only to cases of contested probate, and that the surrogate has in other proceedings the power to allow to the guardian, out of the estate or fund in court, compensation for his services, not limited or restricted to taxable costs.    For the purposes of his argument, the learned counsel has recited at much length the history of surrogates' courts in this state, and has elaborately discussed the inherent power of courts to appoint a guardian ad